[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married in Amioun, El Koura, Lebanon on June 8, 1985. There are two children issue of the marriage, Dalia born April 20, 1986 and Lena born February 20, 1988.
This was a marriage arranged by the plaintiff's father and the defendant's brother-in-law. The defendant had come to the United States in 1971 and lived with his sister. He worked as a machinist at Dynatruck, then at General Electric for six years and in 1977 he commenced working at Avery Abrasives where he was working when the parties married.
The defendant went to Lebanon in 1985 to find himself a wife. The plaintiff met the defendant for the first time on Tuesday, May 20, 1985 after her father and the defendant's brother-in-law met the previous Saturday. The meeting on May 20 was for the defendant to give his approval after meeting for dinner. They were married eleven days later. In the interim period the plaintiff never saw the defendant alone except for one-half hour between May 20 and June 8, the date of their wedding.
In September, 1985 the defendant left the plaintiff to return to Connecticut and his job. He returned to Lebanon in May, 1986, arriving two weeks after Dalia was born. On that occasion, he stayed for a month and a half. During that period, he worked on his house that was being built. The parties moved into that house with the baby and the defendant left again to return to the United States in June, 1986. On January 24, 1987, the plaintiff arrived in the United States with Dalia. They CT Page 1654 lived in a third floor apartment consisting of a living room, bedroom, kitchen and bathroom on Bronx Avenue in Bridgeport with sparse furniture. (The plaintiff testified all the furniture was used.)
The plaintiff testified that the defendant wanted her to go to work all the time. The defendant stated this was not so and he did not want her to go to work. The plaintiff began work at McDonald's on April 11, 1987 washing dishes and baking biscuits. At that time, the defendant was working nights at Avery Abrasives where he worked nine to eleven hours each night. The plaintiff worked days.
The plaintiff continued to work at McDonald's until she was seven months pregnant with Lena. Lena, as previously noted, was born February 20, 1988. During this earlier period, the plaintiff's take home pay was $170.00 to $200.00 per week. She turned her checks over to the defendant, although this is another area of disagreement between the parties, and he paid all the bills in cash. On April 15, 1988, the plaintiff returned to work at McDonald's, working from 8:00 p. m. to 4:00 or 5:00 a.m. as the "biscuit girl," where she continued until June, 1989, when she opened the store owned by the parties. At the time that she left her position at McDonald's, she was working 50 hours per week and bringing home $375.00 as a store manager. Again, the defendant took her paycheck and she had nothing for herself and no bank account. During this period, the defendant's work had shifted to days, so that he took care of the children at night while the plaintiff was working.
On June 15, 1989, the parties began the operation of their store — Brooklawn Grocery Deli at the corner of Brooklawn Avenue and Capital Avenue in Bridgeport on the Fairfield-Bridgeport city line. For the first three months, principally the plaintiff and the defendant's uncle worked to get the store ready for business, tearing up the old floor, laying a new floor, building shelves and painting. The plaintiff bought the inventory and equipment and stacked the shelves while the defendant continued working twelve hours a day at Avery Abrasives. The initial capital for the store, $25,000.00, came from an account at Connecticut Bank Trust, now Fleet Bank.
The plaintiff kept the books, operated the store from 6:00 a.m. to 6:00 p. m. and did the ordering and paid all the CT Page 1655 bills. The defendant ran the store in the evenings from 6:00 to 10:00 p. m. after his work at Avery. The defendant left Avery the end of February, 1990. While the defendant maintained he then worked full time at the store, the plaintiff testified he would come in around 11:00 a.m., stay around for a while and would then come back at 5:00 p. m. to relieve her so she could go home and take care of the children.
The plaintiff is 28 years of age, has had two years of college majoring in philosophy and has taken a three credit course at Fairfield University. The defendant is 43 years of age and attended school only through the fourth grade. He cannot read or write English. The defendant is a skilled machine operator. In February, 1990, when he left Avery Abrasives, he was earning $10.00 per hour. All work over 35 hours per week was at time and a half. The defendant was earning $650.00 to $700.00 per week with a take home pay of $550.00 to $600.00.
The parties have stipulated in writing that their marriage has broken down irretrievably. The plaintiff has testified that the defendant paid no attention to her or to anybody; that he never took her anywhere except once to the diner for dinner; that all he cared about was money; that he harassed her to become pregnant with a son; and that he insisted that she stop seeing her closest friend Carol for eighteen months. She was his slave and, at the end, that is in 1991, he insisted she had been unfaithful to him and was sleeping with other men and promised he would "throw her on welfare and throw her on State Street."
The defendant charged that he found a picture of the plaintiff and a store customer named Peter; that on the back of the picture Peter had written that he loved her, that she was beautiful and that she and he were one. He claimed that he found a Christmas card sent in December, 1990 with expressions of love and a Valentine that was signed by Peter and expressed his love. The defendant claimed that the plaintiff had begged and pleaded with him to give the cards and picture to her and that she had burned them in his presence. The friend, Carol Bertanza, denied that there was any writing on the picture except ordering a copy for reproduction. The plaintiff denied that she had burned the picture and cards or that there were any messages of love. Indeed, the defendant has failed totally upon his prove of any infidelity. CT Page 1656
This is one of those relatively few cases in which the testimony of the plaintiff and that of the defendant on almost every issue is diametrically opposed. Even upon the most insignificant facts, such as the hours that each of the parties worked in the store, these people disagree. The court must, therefore, decide which of the parties is the more credible witness. The court finds that the plaintiff's testimony is the more credible testimony and, where there is a disagreement between the parties' testimony, the court finds the facts as testified to by the plaintiff.
This action was commenced on April 9, 1991. The parties remained living together until July, 1992 when the defendant moved out of the rental first floor flat at 59 Tunxis Hill Road in Fairfield. He, at first, went to live at the store and later to an apartment at 223 Wells Street in Bridgeport. The plaintiff continued to work in the store until October 7, 1992 at which time the defendant caused her to be forcibly removed from the store. The police were called and advised that she would have to leave.
On October 27 the plaintiff was once again hired at McDonald's as a cashier where she earns $294.00 per week with take home pay of $233.00 per week. The defendant claims his net weekly income from the store is $415.00 per week, $350.00 per week from the store less social security and withholding for a net of $265.00 and $150.00 from the Connecticut State Lottery. The defendant values the business at $30,478.00, with a gross value of $40,000.00 and outstanding liabilities of $9,522.00.
While they were together, the parties paid all of the list or expenses as reflected in plaintiff's exhibit F from the store funds plus $500.00 per week for the defendant and $300.00 per week for the plaintiff. Since the plaintiff was put out of the store in October, the defendant has hired his friend Bishar to work in the store at $150.00 per week.
The plaintiff's health is apparently good. However, she testified that she had cystic mastitis and that the defendant had had to take her to the hospital emergency room on five occasions because she could not breathe. She has also had stomachaches. The doctor has stated she may have ulcers. The defendant is in apparent good health. CT Page 1657
It is clear from the evidence that the plaintiff was the motivating force behind the successful store operation. She opened the store and she spent most of her time in the store. The store was opened with $25,000.00 from an account at CBT which was in the defendant's name but comprised the earnings of each of the parties. The store was the defendant's idea, but the parties entered into the project as "their store." The lease, the lotto permit and the beer permit were all in the defendant's name. The plaintiff, however, obtained the lotto permit and dealt with the parties' attorney in the paperwork for the lease. The plaintiff had to be the "middle man" between trades people or upon any business dealings because the defendant was unable to read and write English. The plaintiff, upon coming from Lebanan, knew no English and studied very hard to learn to read and write English.
The pendente lite orders of the court provide for $185.00 per week child support. Based upon the current figures in the parties' financial affidavits, the amount of support per the Family Support Guidelines would be $118.00 per week to be paid by the defendant to the plaintiff. The court previously ordered the defendant to pay the plaintiff's rent of $825.00 per month on November and December first. During the trial of this matter, the court ordered the January and February rent also be paid by the defendant.
Early after this action was commenced, the plaintiff took $17,892.00 from the parties' joint People's Bank account. This was part of the parties' early on negotiations, and while no agreement has been reached by the parties, this sum had been discussed as part of the property to be assigned to the plaintiff pursuant to 46b-81 of the General Statutes.
The defendant took a six week vacation to Lebanon prior to the plaintiff's being put out of the store and took $30,000.00 with him to buy out his mother's and sisters' interests in property left to him by his father in Amioun, El Koura, Lebanon. This property is shown in the defendant's financial affidavit. Since the defendant stated that he left $25,000.00 in Lebanon to be the owner of these properties to eliminate the interests of his three sisters and his mother, it would appear that the defendant's interest is closer to $50,000.00 rather than $12,500.00 as stated in his financial affidavit. CT Page 1658
The value of the business known as Brooklawn Grocery 
Deli is in its ability to produce income. The figures stated by the defendant as to gross revenues and net income are very much understated. The plaintiff testified that they took in $8,750.00 to $9,300.00 gross per week on average up until October when she was put out of the store. As previously stated, the net profit of the store permitted payment of all personal expenses plus $800.00 per week to the parties. The plaintiff started this business, and its success is largely the result of her efforts.
Both of the parties have worked very hard during all of the marriage. The long hours and higher rate of pay of the defendant permitted the savings to begin the business, and both of the parties' earnings permitted the $25,000.00 the defendant took to Lebanon and the $18,000.00 the plaintiff took from the People's Bank Account.
In determining the proper orders in this case the court must consider the factors set forth in 46b-81 and 46b-82
and 46b-84 of the General Statutes together with the provisions of 46b-62 and the Child Support Guidelines. With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. CT Page 1659 Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710
(1992).
As has been said by the Appellate Court in the recent case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531
(1992):
 "General Statutes 46b-81(c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). . . .
 The statutory factors for determining alimony in 46b-82 are almost identical to the factors used to distribute property in 46b-81(c)."
The court has considered all of the criteria of46b-81 and 46b-82 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5
(1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991). CT Page 1660
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of the marriage of the parties shall enter on the ground of irretrievable breakdown of the marriage.
2. Custody of the minor children is granted to the plaintiff. The defendant shall have rights of reasonable visitation. In order to exercise his rights of visitation, the husband shall give 24 hours notice to the wife of the day and time of visitation, and the time which he will return the minor children.
3. The defendant shall pay child support in accordance with the Child Support Guidelines to the plaintiff for each child on a weekly basis until the earliest to occur of the following events: the death of either of the parties, the death of the child, the date when each child reaches the age of 18 years or is earlier emancipated.
4. The defendant shall maintain medical insurance which he presently maintains with Golden Rule for the benefit of the minor children. The defendant shall also maintain dental insurance which he presently has through his former employer, Avery Abrasives, for each of the minor children. He shall continue to maintain medical and dental insurance for each of the minor children until his obligation for support ceases. The defendant and plaintiff shall share equally the unreimbursed medical and dental expenses not covered by insurance on behalf of the minor children. The plaintiff shall be entitled to the provisions of Connecticut General Statutes 46b-84(c). Should hospital CT Page 1661 and medical insurance subsequently become available to the defendant through employment, he shall maintain the same for the benefit of the minor children.
5. The defendant shall maintain life insurance in the amount of $100,000.00 naming each child as irrevocable beneficiary of the sum of $50,000.00 until the defendant's obligation to support said minor child ceases.
6. The plaintiff shall have possession and title to the 1984 Buick motor vehicle.
7. The defendant shall have possession and title to the 1985 Chevrolet pickup truck.
8. The defendant shall assign and transfer to the plaintiff his interest in the business known as Brooklawn Grocery 
Deli located at 652 Brooklawn Avenue, Bridgeport, Connecticut, including, without limitation, all licenses, equipment, inventory, stock-in-trade, bank accounts and good will. The defendant shall also assign the lease to the business premises to the plaintiff.
 The defendant shall not diminish the inventory, bank accounts, cash, inventory or equipment of the business so as to effect its value as a going business prior to the transfer thereof. The plaintiff shall be permitted to enter upon the premises immediately upon the date hereof to observe the orderly transfer and assignment of the business.
9. The defendant is ordered to pay alimony to the plaintiff in the amount of $1.00 per year terminable upon the earliest to occur of the following events: the death of either of the parties, the plaintiff's remarriage, or the date when the defendant no longer has an obligation for support of the children.
10. The plaintiff shall pay no alimony to the defendant.
11. Except as herein stated, each party hereto shall retain her or his own assets, including bank accounts as listed on her or his respective financial affidavits.
12. The defendant shall be responsible for the liabilities CT Page 1662 shown on his financial affidavit and the liabilities on the plaintiff's financial affidavit, and he shall save harmless and indemnify the plaintiff from said liabilities. The defendant shall also be responsible to pay the bill due the Bridgeport Hospital (plaintiff's exhibit A).
13. The defendant shall make himself available to work in the store as the plaintiff may request and as a consultant until he has another position of employment. He shall seek such employment immediately after the date hereof. Until he obtains such employment and so long as he is available for work as hereinbefore noted, he shall receive a salary of $500.00 per week with appropriate FICA, Medicare, federal and state income tax withholding deducted therefrom. This employment shall terminate, if it has not earlier terminated, ninety (90) days after the effective date hereof.
14. Should there he an appeal in this case and a stay in the execution of the judgment, the plaintiff shall be permitted to work in the store and shall receive the salary she would otherwise have received at McDonald's plus the pendente lite orders and payment of her rent.
15. Upon the defendant's subsequent employment, he shall pay support as provided in paragraph three hereof and an immediate order shall enter for wage withholding. If the parties are unable to agree upon the proper figures for wage withholding, they shall return to court for proper orders.
16. The tangible personal property in the possession of each of the parties shall be the property of the possessor free of any claim or demand by the other party.
17. Each party shall pay her or his own attorney's fees.
There are numerous reasons for the court's judgment in this matter. The court considers that the business was, in fact, jointly owned by the parties. In considering a division of the parties' assets, the court has taken into account that the defendant took $30,000.00 within the past six months to Lebanon. The plaintiff, on the other hand, has taken $18,000.00 from the parties' joint savings account. The difference is, of course, $12,000.00. The business has been valued at $30,000.00 CT Page 1663 net, of which the plaintiff's share before this proceeding was $15,000.00.
The plaintiff, with her better command of the English language, is in a better position to manage the store in the court's opinion. The defendant, on the other hand, is a skilled machinist and is capable of earning $10.00 plus per hour in such a position. Both of the parties have been extremely industrious in the past, and the court contemplates that this will continue for the future. Each has contributed equally in the acquisition, preservation and appreciation in value of their marital assets.
Accordingly, judgment shall enter as hereinbefore set forth.
EDGAR W. BASSICK, III, JUDGE